**Daniel Snyder, OSB No. 783856**
dansnyder@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Of Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**KELLY VETERE,**

**PLAINTIFF,**

v.

**SIMPLE FINANCE TECHNOLOGY CORP.**, a Delaware Corporation,

**DEFENDANTS**.

Case No. 3:18-cv-1504

**COMPLAINT**

UNLAWFUL EMPLOYMENT ACTION

FMLA and supplemental state law claims

**JURY TRIAL DEMANDED**

## I. PRELIMINARY STATEMENT

1.      Plaintiff brings this action to remedy violations of Plaintiff's statutory rights

under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, as well as

PAGE 1 – COMPLAINT

supplementary state claims. Plaintiff seeks equitable relief as well as compensatory damages, attorneys' fees and costs.

## II. <u>JURISDICTION</u>

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, federal question jurisdiction because Plaintiff's FMLA claim arises under federal law, and diversity jurisdiction 28 U.S.C. § 1332, because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

3.      Plaintiff requests this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

4.      Venue is in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because the claim arose in this Judicial District.

## III. <u>PARTIES</u>

5.      Plaintiff Kelly Valade Vetere is a citizen of the United States.

6.      Defendant Simple Finance Technology Corp. is a Delaware corporation, registered to do business in Oregon. Simple does regular and sustained business in Oregon, including Multnomah County, Oregon. Simple has an office in Portland, Oregon, where Vetere was employed. At all times material, Vetere worked for Simple in Multnomah County, Oregon.

7.      At all times relevant, defendant's employees and supervisors as their conduct is alleged herein were acting within the course and scope of their employment with the defendant.

PAGE 2 – COMPLAINT

## IV. <u>COMMON FACTUAL ALLEGATIONS</u>

8.     On January 11, 2016, Vetere began working at Simple, reporting to the Vice President of Product, Emmy Yardley. Her role was to build a research team which could conduct research that was needed in 2016 and conduct studies that would inform the strategic direction of the business in 2017.

9.     From August 2016 through January 2017, Vetere hired five additional researchers: Fei Guo, Natalie Dole, Zara Logue, Paige Glowacky, and Reece Dano.

10.    On November 28, 2016, Yardley had her last day at Simple after being asked to leave. Yardley was pregnant at the time.

11.    On November 29, 2016, Vetere began reporting to Joshua Reich, the Chief Executive Officer and interim head of product at Simple.

12.    In January 2017, Vetere was under a considerable amount of stress resulting from work, and began losing sleep and experiencing panic attacks for the first time.

13.    On January 27, 2017, Vetere was diagnosed with shingles, due to extreme stress. Vetere's physician recommended either taking medical leave or leaving her job to find relief from the stress at Simple.

14.    On January 31, 2017, Vetere met with Shane Farrell from "the People team" (Human Resources) to discuss her medical condition and options. Vetere was afraid that her team members and she would be cut if she took time away, so she opted for intermittent leave by taking off every Friday from work. This time off was covered by her PTO until June 2017.

15.    On January 30, Vetere met with Reini Chipman ("Chief People Officer"). Vetere told her she was concerned about being sick and using medical leave, that she did not feel safe in

PAGE 3 – COMPLAINT

her role, as she felt it would show "weakness" and provide a chink in her armor for Reich to utilize against her.

16.    On February 23, 2017, Vetere was invited to a weekly meeting with Reich to discuss his expectations for the team. When she walked into the room she found Reich sitting with Erin Harper from HR. Reich explained that he felt the organization already had a very clear vision on where they needed to head in 2017 and did not feel Research needed to have as strong of a presence in the product development process. He then explained that Vetere was to reduce the headcount of her team from six people to three people. Harper chimed in with a description of Vetere's severance package, if she were to decide to include herself as one of the three people that were let go. Vetere then asked Harper to describe the severance packages for the other five people on her team and she replied, "We do not have that information ready, but I can work on pulling that information for you today." Vetere requested time to think over the decision, considering the change in the work they would be conducting. She wanted to ensure the people they kept would want to stay and would be experienced in the specific areas of the new charter. They allowed her to take the weekend to think it over. At this point, Vetere had no doubt that Harper and Reich were asking her to leave.

17.    On February 24, 2017, Vetere had a private telephone conversation with Michelle Broderick, the Chief Marketing Officer. She asked for Broderick to be open and candid with her and said she was seeking advice on what to do about the staffing cuts. Vetere told her that she felt Reich was trying to push her out and that she was not be able to forge a relationship with him. Broderick encouraged Vetere to stay. She pointed out that Vetere's presence on the team was protecting many people from the issues happening within the executive leadership team. Broderick pointed out that if Vetere left, there would not be anyone left to advocate for the team

PAGE 4 – COMPLAINT

and the research they conduct for product. She also suggested that Vetere stay and figure out a way to reduce her level of effort to a more reasonable contribution of time and effort in work.

18.     On February 27, 2017, Vetere met with Reich to review the work that the team would be able to conduct with the limited resources of three researchers. She explained to him that it would be very difficult to accomplish what was needed with only three team members. Reich smiled and explained that he was "willing to make that compromise." She explained that the team would be relying very heavily on their outsourced research budget to make it through the year with a staffing of three people.

19.     On February 27, 2017, Vetere requested the ability to discuss the situation with one of the senior researchers (Logue) that she wanted to keep on staff. She wanted to meet with Logue first to gauge whether she would even stay, given the reduced impact their work would have on product and design. Vetere was allowed to do this. Logue requested a direct discussion with Reich before making her decision. When she met with Reich, she told Vetere that she told him she felt his decision was "incredibly short-sighted."

20.     On March 1, 2017, Logue made the decision to stay and Vetere submitted to her a list of names to cut to Harper and Reich. She requested that Harper and Reich allow the team to finish out the rest of the month. Vetere also requested that Reich deliver the news to her team. Harper offered to make their last day April 1, 2017, so they could have an extra month of severance. Vetere felt based upon his demeanor and statements that Reich was disappointed to learn that she decided to stay with the company.

21.     On March 3, 2017, two of the employees to be laid off were in Atlanta, conducting a research study. They were to head to NYC the following week to complete the study. Vetere was told to cut the research and demand their return to the office.

PAGE 5 – COMPLAINT

22.     On March 6, 2017, Dano, Dole, and Glowacky were informed that they were being let go.

23.     On March 15, 2017, Vetere's and her team began to meet weekly with Reich to work on rebuilding trust with Guo and Logue and to get clarification from Reich about what his expectations were of the team. As part of that exercise, they each presented a case study of a favorite research study conducted prior to joining Simple. The intent of this exercise was to help Reich get a better understanding of the skills within the research team and how much more they could be doing to help him in his work with building innovative products.

24.     On June 22, 2017, HR informed Vetere that they made a clerical error in her unpaid time reporting in "Bamboo" (time and attendance software). They were working to fix the issue and planned to have it fixed by the following week. Weekly, she followed up with HR to find out how she needed to report her FMLA time in the system. Vetere was either ignored or told they were still working on it. At this point, she felt that they were instead planning to let her go.

25.     On July 6, 2017, Reich provided bi-annual performance feedback. He stated that he was not seeing the impact of Vetere's research on Product that he would expect to see and that she was not meeting his expectations.

26.     During the second week of July 2017, Vetere met with Annamarie in HR to express her concern about Reich's feedback. She explained what had happened and asked if it were possible to remove any of this feedback from her files as she did not feel it was fair or accurate. Annemarie reassured Vetere that Reich did not actually document any of the feedback that he had given and there was no paper trail for the conversation.

PAGE 6 – COMPLAINT

27.     On August 9, 2017, the glitch with the time reporting system regarding Vetere's FMLA time tracking was fixed. She was asked to re-enter her time off requests into the system. She had a vacation planned in August that was previously approved by Reich. Vetere messaged Reich to warn him that he would be getting multiple requests for time off again – even though he had already approved them. Reich did not respond.

28.     The first week of August 2016 Reich's executive assistant cancelled his one-on-one meeting with Vetere.

29.     On August 10, 2017, in preparation for her vacation, Vetere messaged Reich and reminded him that she was leaving and needed him to sign off on the time-off requests in the system. He approved them late that night.

30.     On August 11, 2017, Vetere was included on an email that granted access to the layoff plan and names of those impacted. The document was sent to her in error and then access was locked down.

31.     On August 16, 2017, while on vacation, Vetere received multiple texts from Logue and Guo, telling her that a layoff was happening. She contacted Reich directly and asked him if they needed to talk. He called within 30 minutes. On the call with him was Harper. They told her that they were making a strategic shift back to being a startup and eliminating 10% of the roles at the organization. Unfortunately, Vetere's role was one of those on the list to be eliminated.

32.     On September 1, 2017, Vetere turned in her equipment to HR. Before she left, the interim head of engineering (Mace) saw her and stopped by to chat. Vetere and he had worked together in the past, so she knew him well. He was perceived to be one of the leaders behind all the changes that were made behind the staffing and "dethroned" his boss, the VP of Engineering

PAGE 7 – COMPLAINT

who was also part of the layoffs. He was sympathetic and asked Vetere how she was doing. She said, "I'll be okay. I feel a lot like you probably felt after leaving Urban Airship." Sasha said, "Yeah - when Mike Herrick fired me?" she said, "Well, it's not like Josh [Reich] has not been trying to fire me for ages now." Sasha said, "Yeah, he has."

33.    On September 18, 2017, Logue (Vetere's subordinate who did not manage people as part of her role at Simple) was promoted to replace Scott Edwards as the interim Sr. Director of Product Operations. Logue was then moved to Senior Manager of Consumer Research and Insights. Logue replaced Vetere in her position at Simple. Vetere was not offered the position following the layoff. Logue had not taken medical leave or reported on-the-job injuries or that she suffered from a disability.

## V. CLAIMS FOR RELIEF

### CLAIM I

#### (Family and Medical Leave Act of 1993 - 29 U.S.C. § 2615)

34.    Vetere incorporate all relevant paragraphs as though fully set forth herein.

35.    Simple is an 'employer' within the meaning of 29 U.S.C. § 2611(4).

36.    Simple employed at least 50 employees for each working day during each of 20 or more calendar work weeks in 2016 or 2017.

37.    At all times material, Vetere was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

38.    At all times in 2017, Simple employed 50 or more employees with 75 miles of the worksite where Vetere performed work for Simple.

39.    Vetere was employed by Simple for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave.

PAGE 8 – COMPLAINT

40.     Vetere was employed by Simple for more than 12 months prior to commencing leave on January 31, 2017.

41.     At all times material, Vetere was an 'eligible employee' within the meaning of 29 U.S.C. § 2611(2).

42.     Vetere took medical leave protected by the Family Medical Leave Act (FMLA).

43.     At all material times, Vetere suffered from a serious health condition, as defined by 29 U.S.C. § 2611(11).

44.     Simple interfered, discriminated and retaliated against Vetere for engaging in the protected activity of taking leave under FMLA in violation of 29 U.S.C. § 2615.

45.     Simple interfered, discriminated and retaliated against Vetere for taking medical leave by taking adverse employment actions against Vetere, including, but not limited to, terminating Vetere and refusing to reinstate Vetere to employment.

46.     As a direct and proximate result of Simple's interference, discrimination and retaliation, Vetere has suffered lost income and will continue to suffer past and future wages, past and future benefits, and other expenses, all to Vetere's economic damages in an amount to be determined at trial.

47.     Simple's acts were willful and malicious and done with reckless indifference to Vetere's protected rights.  Simples should be assessed punitive damages in an amount as fixed by a jury to punish Simple and to deter such conduct in the future.

48.     The court should enter an order declaring that Simple violated the FMLA.

49.     To the extent any amount awarded to Vetere is for damages occurring prior to the entry of judgment, Vetere is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

PAGE 9 – COMPLAINT

50.     Vetere is entitled to an award of liquidated damages pursuant to 29 U.S.C. §

2617(a)(1)(A).

51.     Pursuant to 29 U.S.C. § 2617(a)(3), Vetere is entitled to an award of attorney's

fees, expert fees, and costs incurred herein.

52.     Vetere is entitled to post judgment interest on all damages, costs, expenses, and

fees from the date of judgment until the date paid.

## CLAIM II

### (Oregon Family Leave Act – Or. Rev. Stat. § 659A.183)

53.     Vetere incorporate all relevant paragraphs as though fully set forth herein.

54.     Vetere took medical leave protected by the Oregon Family Leave Act (OFLA).

55.     Simple employed 25 or more persons in the State of Oregon for each working day

during each of 20 or more calendar workweeks in the year 2016.

56.     Simple employed 25 or more persons in the State of Oregon for each working day

during each of 20 or more calendar workweeks in the year 2017

57.     Immediately prior to commencing family leave in 2017, Vetere worked for

Simple for more than 180 days.

58.     Vetere worked an average of more than 25 hours per week for Simple during the

180 days immediately preceding the date on which Vetere commenced family leave.

59.     At all material times, Vetere had a serious health condition as that term is defined

in Or. Rev. Stat. § 659A.150(6).

60.     Simple interfered, discriminated and retaliated against Vetere for taking medical

leave by taking adverse employment actions against Vetere, including, but not limited to,

terminating Vetere's employment.

PAGE 10 – COMPLAINT

61.     As a result of Simple's interference, discrimination and retaliation against Vetere, Vetere suffered and continued to suffer economic losses, emotional distress, and other nonpecuniary losses.

62.     As a result of Simple's discrimination and retaliation against Vetere, Vetere is entitled to equitable relief.

63.     Pursuant to 659A.885, Vetere is entitled to recover back pay.

64.     Simple's acts were willful and malicious and done with reckless indifference to Vetere's protected rights.  Simples should be assessed punitive damages in an amount as fixed by a jury to punish Simple and to deter such conduct in the future.

65.     The court should enter an order declaring that Simple violated the OFLA.

66.     To the extent any amount awarded to Vetere is for damages occurring prior to the entry of judgment, Vetere is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

67.     Pursuant to Or. Rev. Stat. §§ 659A.885(1) and 20.107, Vetere is entitled to recover Vetere's reasonable attorney fees and costs, including expert witness fees.

68.     Vetere is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## CLAIM III

### (Wrongful Termination)

69.     Vetere incorporate all relevant paragraphs as though fully set forth herein.

70.     Simple's conduct, as alleged, was in retaliation for her use of protected medical leave, and as such constitutes a wrongful discharge under state common law.

PAGE 11 – COMPLAINT

71.     Vetere's remedies under OFLA and FMLA do not constitute a complete remedy for the damage Simple has inflicted.

72.     As a result, Vetere suffered damage and is entitled to the damages and other relief set forth below.

73.     Vetere is entitled to equitable relief, including but not limited to, a declaration that Simple violated Vetere's statutory rights, reinstatement, and an injunction prohibiting further discrimination and retaliation.

74.     Vetere is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Vetere should be awarded economic damages in an amount determined fair by a jury.

75.     Vetere is entitled to non-economic damages sufficient to compensate Vetere for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Vetere should be awarded non-economic damages in an amount determined fair by a jury.

76.     Simple's acts were willful and malicious and done with reckless indifference to Vetere's protected rights.  Simples should be assessed punitive damages in an amount as fixed by a jury to punish Simple and to deter such conduct in the future.

77.     To the extent any amount awarded to Vetere is for damages occurring prior to the entry of judgment, Vetere is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

78.     Pursuant to Or. Rev. Stat. § 20.107, Vetere is entitled to an award of attorney fees and expert witness fees.

PAGE 12 – COMPLAINT

79.     Vetere is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## CLAIM IV

(Or. Rev. Stat. § 659A.040 - Injured Worker Discrimination and Retaliation)

80.     Vetere incorporate all relevant paragraphs as though fully set forth herein.

81.     Simple discriminated and retaliated against Vetere by changing the terms and conditions of Vetere's employment. Simple's actions violated Or. Rev. Stat. § 659A.040, are an unlawful employment practice, and caused Vetere economic and noneconomic damages.

82.     Simple's unlawful employment actions were taken against Vetere in substantial part because she reported her employment caused anxiety and shingles, both of which are on-the-job injuries.

83.     As a result, Vetere suffered damage and is entitled to the damages and other relief set forth below.

## CLAIM V

(Or. Rev. Stat. § 659A.112 – Disability Discrimination/Retaliation)

84.     Vetere incorporate all relevant paragraphs as though fully set forth herein.

85.     Vetere is a 'disabled person' as defined at Or. Rev. Stat. § 659A.104(1).

86.     Simple is an 'employer' as defined at Or. Rev. Stat. § 659A.106.

87.     After Vetere disclosed Vetere's disability to Simple, Simple began to discriminate against Vetere as alleged above. Said discrimination was based on Simple's retaliation against and disparate treatment of Vetere.

88.     Vetere could perform the essential functions of Vetere's job with Simple with or without the reasonable accommodations of allowing Vetere to continue to work.

PAGE 13 – COMPLAINT

89.     As a result, Vetere suffered damage and is entitled to the damages and other relief set forth below.

## CLAIM VI

### (Or. Rev. Stat. § 659A.199 – Whistleblower Retaliation)

90.     Vetere incorporate all relevant paragraphs as though fully set forth herein.

91.     Vetere reported to Simple conduct that Vetere believed was evidence of a violation of state or federal law, rule, or regulation, to wit, employment discrimination retaliation and interference with medical leave.

92.     Simple discriminated and retaliated against Vetere because of the report made by Vetere.  Simple's actions violated Or. Rev. Stat. § 659A.199, are an unlawful employment practice, and caused Vetere economic and noneconomic damages.

93.     As a result, Vetere suffered damage and is entitled to the damages and other relief set forth below.

## DAMAGES FOR CLAIMS IV-VI

94.     Vetere is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for past and future pecuniary losses. Vetere should be awarded economic damages in an amount determined fair by a jury.

95.     Vetere is entitled to non-economic damages sufficient to compensate Vetere for emotional distress and other nonpecuniary losses in an amount to be proved at trial. Vetere should be awarded non-economic damages in an amount determined fair by a jury.

PAGE 14 – COMPLAINT

96.    Simple's acts were willful and malicious and done with reckless indifference to Vetere's protected rights.  Simples should be assessed punitive damages in an amount as fixed by a jury to punish Simple and to deter such conduct in the future.

97.    Vetere is entitled to equitable relief, including, but not limited to, reinstatement to employment with Simple, as well as an award of back pay and lost benefits.  If appropriate, Vetere should be reinstated and awarded past economic damages in an amount determined fair by a jury.

98.    If reinstatement is not appropriate, then Vetere is entitled to an award for past lost wages and benefits and future lost earnings, benefits, and lost earning capacity, and other compensatory damages for future pecuniary losses. Vetere should be awarded economic damages in an amount determined fair by a jury.

99.    The court should enter an order declaring that Simple violated Or. Rev. Stat. § 659A.040, 112, and 199.

100.    To the extent any amount awarded to Vetere is for damages occurring prior to the entry of judgment, Vetere is entitled to an award of prejudgment interest at the legal rate from the date the damage occurred until the date of judgment.

101.    Pursuant to Or. Rev. Stat. §§ 659A.885 and 20.107, the Vetere is entitled to recover her reasonable attorney fees and costs, including expert witness fees.

102.    Vetere is entitled to post judgment interest on all damages, costs, expenses, and fees from the date of judgment until the date paid.

## VI. PRAYER FOR RELIEF

Vetere prays for the following judgment against Simple:

PAGE 15 – COMPLAINT

**Law Offices of Daniel Snyder**
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249

(a)     A sum which will fully compensate Vetere for her non-economic damages in a sum that is just as determined by a jury;

(b)     A sum which will fully compensate Vetere for her economic damages in a sum that is just as determined by a jury;

(c)     Equitable relief, including but not limited to, reinstatement if Vetere so chooses;

(d)     Liquidated damages;

(e)     Vetere's costs and disbursements incurred herein;

(f)     Vetere's attorney fees; and

(g)     For such other and further relief as the Court may deem just and equitable.

**Vetere demands a trial by Jury.**

Dated: August 15, 2018

Law Offices of Daniel Snyder

*/s/ Daniel Snyder*
Daniel Snyder, OSB No. 783856
dansnyder@lawofficeofdanielsnyder.com
Carl Post, OSB No. 06105
carlpost@lawofficeofdanielsnyder.com
John David Burgess, OSB 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Of Attorneys for Plaintiff

Law Offices of Daniel Snyder
Attorneys At Law
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
(503) 241-3617 Fax (503) 241-2249